**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

275 Rivulon Boulevard, LLC,　　　　　)　　No.  CV-24-02244-PHX-SPL
　　　　　　　　　　　　　　　　　　　)
　　　　　　　　　　　　Plaintiff,　　)
　　　　　　　　　　　　　　　　　　　)　　**ORDER**
vs.　　　　　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　)
American Pacific Mortgage　　　　　　)
Corporation,　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　)
　　　　　　　　　　　　Defendant.　　)
　　　　　　　　　　　　　　　　　　　)

Before the Court is Defendant American Pacific Mortgage Corporation's Motion to Dismiss (Doc. 17), Plaintiff 275 Rivulon Boulevard LLC's Response (Doc. 21), Defendant's Reply (Doc. 24), and Plaintiff's Sur-Reply (Doc. 35). The Court now rules as follows.[1]

## I.    BACKGROUND

In 2016, Plaintiff entered a commercial lease agreement with AmeriFirst Financial ("AmeriFirst"), an entity that is not a party in this suit, which was subsequently modified through four different amendments. (Doc. 17 at 2). On January 23, 2023, AmeriFirst assigned the lease to Defendant with Plaintiff's written consent. (*Id.*). Plaintiff alleges that under this assignment, Defendant agreed to perform all obligations under the lease and that AmeriFirst was not released from its lease obligations. (Doc. 1-1 at 9–10).

---

[1] Because it would not assist in resolution of the instant issues, the Court finds the pending motion is suitable for decision without oral argument. *See* LRCiv. 7.2(f); Fed. R. Civ. P. 78(b); *Partridge v. Reich*, 141 F.3d 920, 926 (9th Cir. 1998).

On August 8, 2023, Defendant assigned the lease back to AmeriFirst with Plaintiff's written consent. (*Id*. at 10). Plaintiff alleges that its consent to the second assignment was conditioned on Defendant's agreement to remain liable for the full performance of the lease obligations. (*Id.* at 11). AmeriFirst also agreed to remain liable for the lease obligations. (*Id.* at 10–11).

Soon after the second assignment, on August 24, 2023, AmeriFirst filed a petition for bankruptcy, which constitutes a default of the lease under the lease terms. (*Id.* at 11). Plaintiff alleges that AmeriFirst has failed to pay rent since at least October 1, 2023. (*Id.*). Plaintiff alleges that Defendant remains liable for the unpaid rent under the lease, which as of the Complaint's filing on August 28, 2024, totals $983,460.02 with interest accruing at a rate of 18 percent per year. (Doc. 1-1 at 11–13).  On January 10, 2024 and April 23, 2024, Plaintiff sent letters to Defendant notifying it of AmeriFirst's default and Defendant's alleged obligation to pay and demanding payment. (*Id.* at 11–12). Defendant has not remitted payment for the past due rent. (*Id.* at 13).

On August 6, 2024, Plaintiff filed suit in state court seeking declaratory judgment pursuant to A.R.S. section 12-1832 that Defendant is liable for payment of the unpaid rent and future rent and bringing claims for breach of contract, breach of the covenant of good faith and fair dealing, and unjust enrichment. (*Id.* at 13–16). Defendant subsequently removed the case to federal court (Doc. 1) and filed the present Motion to Dismiss. (Doc. 17).

## II.    LEGAL STANDARD

"To survive a Rule 12(b)(6) motion for failure to state a claim, a complaint must meet the requirements of Rule 8." *Jones v. Mohave Cnty.*, No. CV 11-8093-PCT-JAT, 2012 WL 79882, at *1 (D. Ariz. Jan. 11, 2012); *see also Int'l Energy Ventures Mgmt., L.L.C. v. United Energy Grp., Ltd.*, 818 F.3d 193, 203 (5th Cir. 2016) (Rule 12(b)(6) provides "the one and only method for testing" whether pleading standards set by Rule 8 and 9 have been met); *Hefferman v. Bass*, 467 F.3d 596, 599–600 (7th Cir. 2006) (Rule 12(b)(6) "does not stand alone," but implicates Rules 8 and 9). Rule 8(a)(2) requires that a

pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A court may dismiss a complaint for failure to state a claim under Rule 12(b)(6) for two reasons: (1) lack of a cognizable legal theory, or (2) insufficient facts alleged under a cognizable legal theory. *In re Sorrento Therapeutics, Inc. Secs. Litig.*, 97 F.4th 634, 641 (9th Cir. 2024) (citation omitted). A claim is facially plausible when it contains "factual content that allows the court to draw the reasonable inference" that the moving party is liable. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Factual allegations in the complaint should be assumed true, and a court should then "determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679. Facts should be viewed "in the light most favorable to the non-moving party." *Faulkner v. ADT Sec. Servs., Inc.*, 706 F.3d 1017, 1019 (9th Cir. 2013). "Nonetheless, the Court does not have to accept as true a legal conclusion couched as a factual allegation." *Jones*, 2012 WL 79882, at *1 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

## III.    DISCUSSION

### a.    Declaratory Judgment and Breach of Contract

Defendant argues that dismissal of Plaintiff's declaratory judgment and breach of contract claims is warranted because (1) Defendant never "stepped into the shoes" of its assignor, AmeriFirst, and therefore cannot be held liable for AmeriFirst's failure to fulfill the lease obligations; and (2) alternatively, the alleged guaranty agreement is unenforceable because Defendant never signed any contract of guaranty. (Doc. 17 at 3–6). Additionally, Defendant argues in its Reply that Plaintiff's declaratory judgment claim should be dismissed because it is duplicative of Plaintiff's breach of contract claims.[2] (Doc. 28 at 2).

### i.    Declaratory Judgment

With respect to Plaintiff's declaratory judgment claim, the Court finds that it is impermissibly duplicative of its breach of contract claim and thus must be dismissed under

---

[2] On January 28, 2025, the Court issued an Order allowing Plaintiff to file a sur-reply to address this newly raised argument in Defendant's Reply. (Doc. 34). Plaintiff filed its Sur-Reply on February 3, 2025. (Doc. 35).

the Federal Declaratory Judgment Act ("DJA"), 28 U.S.C. § 2201. Under the DJA, courts may "declare the rights and other legal relations of any interested party seeking such declaration." 28 U.S.C. § 2201(a). Federal courts "have discretion to determine whether maintaining jurisdiction over the declaratory action would be appropriate." *Revive You Media LLC v. Esquire Bank*, No. CV-18-00541-PHX-DGC, 2018 WL 2164379, at *6 (D. Ariz. May 10, 2018) (citing *Allstate Ins. Co. v. Herron*, 634 F.3d 1101, 1107 (9th Cir. 2011)). The Ninth Circuit has instructed district courts to consider a variety of factors in exercising this discretion, including whether retaining jurisdiction would

> (1) involve the needless determination of state law issues; (2) encourage the filing of declaratory actions as a means of forum shopping; (3) risk duplicative litigation; (4) resolve all aspects of the controversy in a single proceeding; (5) serve a useful purpose in clarifying the legal relations at issue; (6) permit one party to obtain an unjust res judicata advantage; (7) risk entangling federal and state court systems; or (8) jeopardize the convenience of the parties.

*Herron,* 634 F.3d at 1109. Courts interpret the first factor "to preclude declaratory judgment claims that simply repeat claims or defenses already in the action." *Revive You Media LLC*, 2018 WL 2164379, at *7. However, dismissal of declaratory judgment claims is appropriate "'only when it is clear that there is a complete identity of factual and legal issues' between the declaratory judgment claim and the other counts." *Id.* (citation omitted).

Plaintiff argues that the claims are not duplicative and that it "included Count 1 for declaratory judgment to, among other reasons, obtain clarification from the Court regarding the nature and extent of American Pacific's ongoing obligations under the Lease after this lawsuit concludes." (Doc. 35 at 2). Put simply, Plaintiff argues that its breach of contract claim seeks only the unpaid rent prior to the lawsuit through the entry of judgment in this action, whereas the declaratory judgment claim seeks all current and future unpaid rent. (*Id.*).

The Court is unpersuaded by this argument. Plaintiff's Count One requests declaratory judgment (1) that Plaintiff "is entitled a declaration that Defendant is liable for

any additional unpaid Rent that has accrued since the filing of this Complaint *through the date such declaratory judgment is issued*"; (2) that "Defendant is liable to Rivulon for the payment of Additional Unpaid Rent *during the pendency of this action*"; or alternatively, (3) that "Defendant's agreement to remain liable under the Second Assignment . . . renders Defendant a guarantor of the lease", and (4) that "as guarantor, Defendant is liable to Rivulon for the payment of Outstanding Unpaid Rent and Additional Unpaid Rent." (Doc. 1-1 at 13–14 (emphasis added)).

Plaintiff's breach of contract claim, Count Two, states that it "seeks from Defendant all Outstanding Unpaid Rent in the amount of $983,460.02 plus all Additional Unpaid Rent in the amount of $90,302.12 per month plus interest at the rate of 18% per annum beginning on the date that the Rent was due." (*Id*. at 16). There is no language in Plaintiff's breach of contract claim that limits its request for future unpaid rent to only that which is accrued until the final judgment.[3] Thus, its requested declaratory relief, and not the requested breach of contract relief, would limit its ability to collect future rent to the unpaid rent only through the entry of final judgment.

The Court finds that under Arizona common law and the terms of the relevant contracts, Plaintiff's breach of contract claim includes the payment of future unpaid rent in the event of breach. Specifically, under Arizona law, "if a lease is not terminated, the landlord may recover unpaid rent due prior to reletting the premises and future rent due for the balance of the lease term, subject to the landlord's duty to mitigate damages by reletting the premises." *Premier Consulting & Mgmt. Sols., LLC v. Peace Releaf Ctr. I*, 544 P.3d 658, 666 (Ariz. Ct. App. 2024). The Lease provides that in the event of default, Plaintiff may elect to terminate or take possession of the premises, and that the tenant is still obligated to pay all rent and other sums as if the termination or repossession has not

---

[3] The Court is granting Plaintiff leave to amend on Count Three. To the extent that Plaintiff's Prayer for Relief for breach of contract, but not the actual claim for breach of contract, limits relief to additional unpaid rent "due after the filing of this Complaint but before judgment is entered," the Court will allow Plaintiff to amend the Prayer for Relief to clarify whether it seeks relief for its breach of contract claim to the full extent allowed under Arizona common law and the lease terms.

occurred, minus the proceeds of the reletting of the Premises. (Doc. 1-1 at 55–56). Thus, Plaintiff can recover future due rent pursuant to the contract terms and Arizona common law.

All told, Plaintiff's Count One arises in contract and seeks a declaration regarding Defendant's obligations to pay the outstanding unpaid rent and additional unpaid rent. (Doc. 1-1 at 13–14). Plaintiff's breach of contract claim seeks resolution of the same issue: whether Defendant breached the lease agreement and relevant assignment contracts and is thus liable for all current and future unpaid rent. (*Id.* at 16). As such, the Court finds that Plaintiff's declaratory judgment claim does not seek an independent cause of action, and that Plaintiff's request for outstanding unpaid rent is sufficiently covered by its breach of contract claim. *See Mewawalla v. Middleman*, 601 F. Supp. 3d 574, 613 (N.D. Cal. 2022) ("Since, Plaintiff's claim for declaratory relief is seeking the same factual findings as his breach of contract claims, it is duplicative."). This factor weighs heavily in favor of dismissal. *See Vascular Imaging Pros., Inc. v. Digirad Corp.*, 401 F. Supp. 3d 1005, 1010 (S.D. Cal. 2019) ("[W]here determinations of a breach of contract claim will resolve any question regarding interpretation of the contract, there is no need for declaratory relief, and dismissal of a companion declaratory relief claim is appropriate.") (citation omitted). The Court will accordingly dismiss Count One.

## ii.  Breach of Contract

Defendant argues that Plaintiff's theory that Defendant is liable because it "step[ped] into the shoes of AmeriFirst" under the First Assignment fails because (1) Plaintiff also alleges that Defendant guaranteed the lease obligations, and a party cannot guaranty its own obligation; or (2) Defendant "would have stepped out" of those shoes with the Second Assignment. (Doc. 17 at 3–5). Alternatively, Defendant argues that the contract is unenforceable pursuant to the statute of frauds because Defendant did not sign the contract page containing the guaranty clause. (*Id.* at 5).

As a threshold matter, to the extent that Defendant argues that Plaintiff's alleged theories of guaranty liability and assignment liability contradict each other and, as a result,

neither theory of liability states a claim upon which relief may be granted, the Court rejects this argument. (*Id.* at 3–5). At the pleading stage, Plaintiffs are permitted to pursue alternative, inconsistent claims. *See Anderson v. Edward D. Jones & Co.*, 990 F.3d 692, 700–01 (9th Cir. 2021) (explaining that in light of Rule 8's liberal pleading standard, "a plaintiff may pursue multiple, even if inconsistent, theories of recovery" and "a pleading should not be construed as an admission against another alternative or inconsistent pleading") (citation omitted).

The Second Assignment contract, attached to Plaintiff's Complaint, is titled "Assignment and Landlord's Consent to Assignment of Lease." (Doc. 1-1 at 123). It provides that:

> AMP desires to assign its interest in the Lease back to AmeriFirst pursuant to the terms of this Agreement and Landlord's consent hereto and Landlord is willing to consent to the assignment based on the terms and conditions of this Agreement and Landlord's consent.

(*Id.*). The signature page, signed by Defendant, provides "Landlord Consent to follow." (*Id.* at 125). The Landlord Consent page provides the "Assignee and Assignor expressly acknowledge and agree that . . . each of Assignee and Assignor shall remain liable for, and shall not be released from, the full and faithful performance of all terms of the Lease," including the payment of all rents and other amounts to be paid under the lease. (*Id.* at 126). This page has a banner at the top designating that it was included in the same DocuSign Envelope as the other portions of the Second Assignment contract. (*Id.*).

The statute of frauds bars a party's suit "[t]o charge a person upon a promise to answer for the debt, default or miscarriage of another" unless the agreement is in writing and is signed by the party to be charged. A.R.S. § 44-101(2). Defendant argues that because it did not sign the Landlord's Consent document, which provided the guaranty agreement at issue, and only signed the Assignment contract, the alleged guaranty is unenforceable. (Doc. 17 at 5).

For terms on a separate document to become part of the contract, the separate

document must be (1) physically attached; or (2) clearly and unambiguously incorporated by reference. For an incorporation by reference to be valid, the reference "must be *clear and unequivocal* and must be called to the attention of the other party, he must consent thereto, and the terms of the incorporated document must be known or easily available to the contracting parties . . . ." *United Cal. Bank v. Prudential Ins. Co. of Am.*, 681 P.2d 390, 420 (Ariz. Ct. App. 1983) (citation omitted). "Mere reference to a document for descriptive purposes does not operate as an incorporation of the document into a contract." *Id.* To that end, "[w]hile it is not necessary that a contract state specifically that another writing is 'incorporated by this reference herein,' the context in which the reference is made must make clear that the writing is part of the contract." *Id.*

While the Court notes that the parties could have avoided any question of enforceability under the statute of frauds by including the guaranty clause in the main portion of the Second Assignment contract or by having Defendant and AmeriFirst sign the Landlord Consent page, it cannot conclude that the Landlord Consent document is not binding. The Court determines—and Defendant does not argue otherwise—that the Landlord Consent document was attached to the signed Second Assignment contract. Even if the DocuSign Envelope ID is incorrect in reflecting that the documents were bundled together, the Landlord Consent document was sufficiently incorporated by reference. The Second Assignment contract clearly and unequivocally called the parties' attention to the Landlord Consent document, and Defendant signed the attached document that stated it was "pursuant to the terms of . . . Landlord's consent hereto[.]" (Doc. 1-1 at 123). As noted above, the Second Assignment contract provided that the Landlord Consent document followed, and as such, the Court infers that it was known or easily available to the parties. Thus, the statute of frauds does not bar enforcement of the contract as a matter of law.

Furthermore, the Second Assignment contract's plain text does not evince the parties' intent to relieve Defendant from liability in the case of AmeriFirst's default. When interpreting contracts, Arizona courts "attempt to ascertain and give effect to the intention of parties at the time the contract was made if at all possible." *Shoppes at Mirador Square*

*LLC v. Wild Oats Markets Inc*., No. CV-21-00831-PHX-GMS, 2023 WL 2561567, at *4 (D. Ariz. Mar. 17, 2023) (citing *Taylor v. State Farm Mut. Auto. Ins. Co*., 854 P.2d 1134, 1138 (Ariz. 1993)). In doing so, courts must construe contract provisions "according to their plain and ordinary meaning" in the context of the entire contract. *Terrell v. Torres*, 456 P.3d 13, 16 (2020), *as amended* (Feb. 21, 2020).

Here, the plain language of the Second Assignment contract is clear that Defendant agreed to terms of the Landlord Consent provisions. The Landlord Consent section clearly provides that "each of Assignee and Assignor shall remain liable for, and shall not be released from, the full and faithful performance of all terms of the Lease" including the payment of all rents and other amounts to be paid under the lease. (Doc. 1-1 at 126). Thus, without deciding whether the First Assignment imposed liability on Defendant that withstood the Second Assignment, the Court finds that Plaintiff has alleged facts sufficient to state a claim that Defendant breached the guaranty portion of the Second Assignment contract. As such, dismissal of this claim is not warranted.

### b. Breach of Duty of Good Faith and Fair Dealing

Additionally, Defendant argues that Plaintiff fails to state a claim for breach of the covenant of good faith and fair dealing. (Doc. 17 at 6). Plaintiff argues that Defendant breached the covenant of good faith and fair dealing because Defendant "knew or should have known the condition of AmeriFirst's … financial circumstances," did not disclose them to Plaintiff before assigning Defendant's lease obligations, and "has acted in a manner that deprives [Plaintiff] the benefit" of the lease and second assignment. (Doc. 1-1 at 16). First, Defendant argues that the implied covenant cannot create duties that contradict express contractual terms under Arizona law, and the contract states that Plaintiff did not rely on any express or implied representations, promises, or warranties not included in the contract. (Doc. 17 at 6). Second, Defendant argues that Plaintiff's allegation that Defendant "knew or should have known" about AmeriFirst's financial condition is conclusory and unsupported by factual allegations. (*Id.* at 7).

"Arizona law implies a covenant of good faith and fair dealing in every contract."

*Wells Fargo Bank v. Ariz. Laborers, Teamsters & Cement Masons Loc. No. 395 Pension Tr. Fund*, 38 P.3d 12, 28 (Ariz. 2002), *as corrected* (Apr. 9, 2002). The duty of good faith and fair dealing requires parties to a contract to refrain "from doing anything to prevent other parties to the contract from receiving the benefits and entitlements of the agreement." *Id*. It "emphasizes faithfulness to an agreed common purpose and consistency with the justified expectations of the other party." *Id*. (quoting Restatement (Second) of Contracts § 205 cmt. a (1981)). In other words, a party can breach the implied covenant by "exercising express discretion in a way inconsistent with a party's reasonable expectations and by acting in ways not expressly excluded by the contract's terms but which nevertheless bear adversely on the party's reasonably expected benefits of the bargain." *Bike Fashion Corp. v. Kramer*, 46 P.3d 431, 435 (Ariz. Ct. App. 2002). "To determine the parties' reasonable expectations, the relevant inquiry always will focus on the contract itself, to determine what the parties did agree to." *Mustafa v. Yuma Reg'l Med. Ctr*., No. CV-21-00161-PHX-ROS, 2023 WL 155856, at *8 (D. Ariz. Jan. 11, 2023), *aff'd*, No. 23-15169, 2024 WL 2717399 (9th Cir. May 28, 2024) (citation and quotations omitted).

On the other hand, bad-faith conduct "violate[s] community standards of decency, fairness or reasonableness." Restatement (Second) of Contracts § 205 cmt. a (1981). To that end, breach of the implied covenant entails something beyond a breach of contract. *Crosby v. Mesa Desert Heights Homeowners Ass'n*, No. 1 CA-CV 24-0003, 2024 WL 4455204, at *3 (Ariz. Ct. App. Oct. 10, 2024) (citing *FL Receivables Tr. 2002-A v. Ariz. Mills, L.L.C*., 281 P.3d 1028, 1037 (Ariz. Ct. App. 2012) (one party's attempt to enforce an incorrect interpretation of a contract is not enough to establish a breach of the covenant of good faith and fair dealing)).

To the extent that Plaintiff's claim is based on the premise that Defendant has breached the implied covenant by failing to pay the outstanding rent, Plaintiff does not allege a breach of covenant of good fair and fair dealing beyond a breach of contract. *See id.*; *MiCamp Sols. LLC v. PayStream LLC*, No. CV-23-01842-PHX-ROS, 2024 WL 342444, at *3 (D. Ariz. Jan. 30, 2024) ("Straightforward breaches of the contract's written

terms cannot be the basis for a claim of breach of the implied covenant of good faith and fair dealing."). As such, Plaintiff does not state an actionable claim on that basis.

With respect to Plaintiff's argument that Defendant breached the implied covenant because it "knew or should have known" about AmeriFirst's pending bankruptcy and failed to disclose that information to Plaintiff, the Court finds that Plaintiff fails to allege sufficient facts supporting this conclusory statement. (Doc. 1-1 at 16). Plaintiff's Response asserts that "as a result of the nature of the entities and the relationship between the two, [Defendant] knew or should have known the condition of AmeriFirst's financial circumstances." (Doc. 21 at 14). But neither Plaintiff's Complaint nor its Response enlighten the Court to any information about the nature of the entities or their relationship, or why those factors demonstrate that Defendant knew or should have known about AmeriFirst's financial condition.

To that end, the Court finds Plaintiff's reliance on *Wells Fargo,* 38 P.3d 12, to be misplaced. (*Id.* at 11–12). In that case, the Arizona Supreme Court found that the issue of whether a bank breached the covenant of good faith and fair dealing by failing to disclose the poor financial status of a debtor so that plaintiff would assume the bank's loan as a permanent financer was a question for the jury. *Wells Fargo Bank*, 38 P.3d at 29. Unlike the present matter, in *Wells Fargo*, there was strong evidence that the bank knew of the plaintiff's ignorance as to the debtor's true financial status and "engaged in a systematic strategy designed to withhold material information from [the plaintiff]." *Id.* at 492–93. Instead, here, the Court finds that Plaintiff has not provided facts that, taken as true, support a finding that Plaintiff had a reasonable expectation in Defendant providing it financial information on AmeriFirst and that Defendant had such knowledge. However, as additional facts may remedy Plaintiff's Complaint, the Court finds that leave to amend is appropriate.

### c. Unjust Enrichment

In Arizona, "[u]njust enrichment occurs when one party has and retains money or benefits that in justice and equity belong to another." *Loiselle v. Cosas Mgmt. Grp., LLC*, 228 P.3d 943, 946 (Ariz. Ct. App. 2010) (citations and quotations omitted.). "To prevail

on an unjust enrichment claim, a plaintiff must prove: '(1) an enrichment; (2) an impoverishment; (3) a connection between the enrichment and the impoverishment; (4) the absence of justification for the enrichment and the impoverishment; and (5) the absence of a legal remedy.'" *Serrano*, 2012 WL 75639, at *7 (citing *Trustmark Ins. Co. v. Bank One, Ariz. N.A*., 48 P.3d 485, 491 (Ariz. Ct. App. 2002)). A plaintiff must show that the defendant retained a benefit at the plaintiff's expense and that it would be unjust for the defendant to retain the benefit without compensating the plaintiff. *Span v. Maricopa Cnty. Treasurer*, 437 P.3d 881, 886 (Ariz. Ct. App. 2019) (citations omitted). Moreover, "where there is a specific contract which governs the relationship of the parties, the doctrine of unjust enrichment has no application." *Brooks v. Valley Nat. Bank*, 548 P.2d 1166, 1171 (Ariz. 1976) (citations omitted). The existence of a contract bars tort claims when the claim would not exist but for a breach of a contract. *Huffman v. JP Morgan Chase Bank, NA*, No. CV-22-00903-PHX-JJT, 2024 WL 4817654, at *2–3 (D. Ariz. Nov. 18, 2024) (collecting cases discussing contractual bar to unjust enrichment claims).

Here, a contract governs the relationship between the parties. Because Plaintiff would not have a claim but for Defendant's alleged breach of the lease agreement, Plaintiff's claim for unjust enrichment is barred as a matter of law. As such, Plaintiff's unjust enrichment claim is dismissed with prejudice.

## IV.    CONCLUSION

All told, "whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. A district court should normally grant leave to amend unless it determines that the pleading could not possibly be cured by allegations of other facts. *Cook, Perkiss & Liehe v. N. Cal. Collection Serv.*, 911 F.2d 242, 247 (9th Cir. 1990).

The Court declines to exercise jurisdiction over Plaintiff's Count One: Declaratory Judgement, and as such, dismissal is warranted. Additionally, Plaintiff failed to allege enough facts to "plausibly give rise to an entitlement to relief" in its Counts Three and

Four. *Iqbal*, 556 U.S. at 679. Therefore, the Complaint fails to satisfy the pleading standards set forth by Rule 8 and 12(b)(6), and dismissal is both warranted and necessary. Plaintiff's Count Four: Unjust Enrichment claim cannot be cured with further amendment and is thus futile. *See Bonin v. Calderon*, 59 F.3d 815, 845 (9th Cir. 1995) ("Futility of amendment can, by itself, justify the denial of a motion for leave to amend."). However, Plaintiff will be granted leave to amend its Count Three to cure the deficiencies identified by the Court in this Order. Accordingly,

**IT IS ORDERED** that Defendant American Pacific Mortgage Corporation's Motion to Dismiss (Doc. 17) is **granted in part** and **denied in part**.

**IT IS ORDERED** that Plaintiff's Count One: Declaratory Judgment is **dismissed without prejudice**.

**IT IS FURTHER ORDERED** that Plaintiff's Count Three: Breach of Duty of Good Faith and Fair Dealing is **dismissed without prejudice** and with **leave to amend**. Plaintiff may file an amended complaint by **April 7, 2025.**

**IT IS FURTHER ORDERED** that Plaintiff's Count Four: Unjust Enrichment is **dismissed with prejudice**.

Dated this 7th day of March, 2025.

Honorable Steven P. Logan
United States District Judge